NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231021-U

NOS. 4-23-1021, 4-23-1022 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.P. and O.P., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Woodford County |
| Petitioner-Appellee, | ) | Nos. 22JA1, |
| v. | ) | 22JA2 |
| Michael P., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding the trial court's findings that respondent
was unfit and that termination of his parental rights was in the best interests of his
children were not against the manifest weight of the evidence.

¶ 2    Respondent, Michael P., appeals the trial court's order terminating his parental

rights as to his two children, A.P. (then seven years old) and O.P. (then three years old).

Respondent argues the court erred by finding he was unfit and that termination of his parental

rights was in the minors' best interests. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4    On January 19, 2022, the State filed petitions for adjudication of wardship

concerning A.P. and O.P., which alleged that the minors were residing in an environment

injurious to their welfare because (1) their parents had a history of drug use and (2) their mother, Amanda D., had an intact case with the Illinois Department of Children and Family Services (DCFS) and had tested positive for methamphetamine the day before. The trial court entered an order granting temporary custody of the minors to DCFS.

¶ 5        On March 3, 2022, the trial court entered an adjudicatory order finding, pursuant to the parents' admission, that the minors were neglected in that they were in an environment injurious to their welfare. On May 2, 2022, the court entered a dispositional order finding it was in the best interests of the minors to be made wards of the court, Amanda D. was unfit to care for the minors due to substance abuse issues, respondent was unfit to care for the minors due to domestic violence and substance abuse issues, and the permanency goal of return home within 12 months was appropriate. The court ordered that the minors be made wards of the court, directed the parents to comply with the DCFS service plan, and granted custody and guardianship of the minors to DCFS. The court specifically ordered that respondent complete three random drug drops per month and a substance abuse assessment.

¶ 6        On May 10, 2023, the State filed petitions to terminate respondent's parental rights as to both of the minors. The petitions alleged respondent was unfit on the grounds that he had not made (1) reasonable efforts to correct the conditions that led to the removal of the minors during the nine-month period of August 1, 2022, through May 1, 2023 (750 ILCS 50/l(D)(m)(i) (West 2022)) or (2) reasonable and substantial progress toward the return of the minors during the nine-month period from August 1, 2022, through May 1, 2023 (*id.* § 1(D)(m)(ii)).

¶ 7        On August 7, 2023, a hearing was held on the unfitness portion of the State's petition to terminate parental rights. At the State's request, the trial court took judicial notice of the petitions for adjudication of wardship, the adjudicatory order, and the dispositional order.

The court also admitted copies of two of respondent's service plans, which were dated July 19, 2022, and January 12, 2023, respectively.

¶ 8        Morocca Burnside, a child welfare supervisor with Lutheran Social Services, testified she was familiar with the minors' case through her supervisory role. She testified that the children were brought into care due to substance abuse and domestic violence. Both parents were ordered to complete services before the children could be returned, and the agency made both parents aware of the services they were required to complete.

¶ 9        Burnside testified that from August 1, 2022, through May 1, 2023, respondent's communication with the agency started out "okay" but decreased as the case went on. He never reported having any employment, and he did not have a stable address. At times, he stayed with his mother, which he was not allowed to do because the children were living with her. Burnside indicated that respondent had been ordered to complete domestic violence services, but he had not done so during the nine-month period at issue. She stated he completed the "initial consents," but his former caseworker did not submit the referral in a timely fashion. Burnside subsequently resubmitted the consents on May 5, 2023, to refer respondent for domestic violence services.

¶ 10        Burnside stated respondent was also required to complete drug drops. He failed to appear for 10 or 11 of the drops, which were counted as positive. On two occasions, he tested positive for cocaine and methamphetamine. Burnside indicated respondent had been participating in visitation with the children. She stated the visits were "go[ing] well" and respondent and the children "did okay with each other."

¶ 11        Respondent presented no evidence.

¶ 12        During argument, the State asserted that it was "not going to argue the domestic violence" because "[i]t sound[ed] like that was not something that was really offered to

[respondent]." The State argued that respondent had not done what was necessary to correct the conditions that brought the children into care due to his positive drug drops and his failures to appear for drops. The State also noted that respondent did not have a stable address, was not employed, and had minimal communication with the agency.

¶ 13        The trial court found the State had proven the grounds for unfitness alleged in the petition by clear and convincing evidence. The court stated that respondent had an obligation to make reasonable efforts and progress despite the case worker's failure to make a timely domestic violence referral. The court then stated:

> "Now, disregarding the domestic violence situation in deference to the fact that evidently there was some sort of bureaucratic nightmare going on in regard to the referrals for domestic violence, both parents here, both parents here, were adjudicated and dispositions found unfit. Why? In part, at least, for substance abuse issues. Both of them on repeated occasions have tested positive for cocaine and methamphetamine and cannabis."

The court continued:

> "And so it is darn near impossible to find that the parents in this instance made reasonable efforts to correct the conditions that caused the removal of the minors. Why were they removed? For substance abuse issues. And both parents continued to participate in substance abuse issues.
>
> And then, secondly, the second ground, *** that the parents did not make reasonable and substantial progress in that relevant nine-month time period after adjudication. In that nine-month time frame we look at they continued to use

- 4 -

drugs, serious drugs, and they didn't do any treatment. That's no progress whatsoever."

¶ 14   On September 15, 2023, the trial court held a best interests hearing. The parties indicated they did not object to the court considering as evidence the best interests report, which recommended that A.P. and O.P.'s permanency goal be changed to adoption.

¶ 15   The minors' foster mother testified that the minors had resided with her since February 9, 2023. She indicated the children had toys and clothing in her home, and they were up-to-date on their immunizations and doctor's appointments. She stated she loved the children, and they had indicated that they loved her and wanted to stay with her. She stated she was willing to foster relationships with the children's extended family, and she took them to church occasionally.

¶ 16   Burnside testified that respondent had been consistent with visiting the children. However, he had not completed a required substance abuse evaluation, did not consistently complete drug drops, had tested positive for substances, and had not engaged in domestic violence services. Burnside also indicated respondent had not been communicating with the agency and was a registered sex offender.

¶ 17   The trial court found that termination of respondent's parental rights was in the minors' best interests, and it changed the permanency goal to adoption. The court indicated it had considered the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-3(4.05) (West 2022)), and it discussed each factor individually. The court found respondent would not provide the type of safety and welfare that the children's foster placement provided, noting that he had "chosen not to address services that are needed for his substance abuse issues." The court found that the development of the

children's identity would be fostered in their current placement. The court acknowledged A.P. and O.P.'s family ties would be impacted by terminating respondent's parental rights. However, it also found that the children's sense of attachment and security would be greater in their foster placement than with their parents, the children desired to stay in their current placement, and their need for permanency favored granting the petition. The court found there was no evidence as to when the children's parents "would decide to change their mind[s] and start getting their act[s] together."

¶ 18        The trial court entered a written order terminating respondent's parental rights to both minors. The court found respondent was unfit in that he failed to make reasonable efforts or reasonable progress during the period from August 1, 2022, through May 1, 2023. The court further found that the best interests of the minors required the appointment of a guardian with the power to consent to their adoption. This appeal followed.

¶ 19                    II. ANALYSIS

¶ 20                    A. Unfitness Finding

¶ 21        Respondent argues the trial court erred by finding he was unfit on the basis that he failed to make reasonable efforts and progress during the relevant nine-month period. Respondent contends the evidence showed that his caseworker failed to submit a referral for the domestic violence services during the nine-month period at issue, and, accordingly, it was not his fault that he did not begin domestic violence services during that period.

¶ 22        The involuntary termination of parental rights involves a two-step process. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). First, the State must prove by clear and convincing evidence that the parent is "unfit" pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2) (West 2022); *C.W.*, 199 Ill. 2d at 210. If the court finds the

- 6 -

parent unfit, it then considers whether termination of parental rights is in the child's best interest. See 705 ILCS 405/2-29(2) (West 2022); *C.W.*, 199 Ill. 2d at 210.

¶ 23 Section 1(D) of the Adoption Act (750 ILCS 5/1(D) (West 2022)) sets forth numerous grounds upon which a parent may be deemed unfit. Any one of these grounds for unfitness, if properly proven, is sufficient for a court to enter a finding of unfitness. *C.W.*, 199 Ill. 2d at 210. Relevant to this appeal, section 1(D)(m) of the Adoption Act (id. § 1(D)(m)) provides that grounds for unfitness include:

> "Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor ***, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor ***."

¶ 24 Our supreme court has held:

> "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

¶ 25 We will not disturb a trial court's determination that parental unfitness has been established by clear and convincing evidence unless that determination is contrary to the manifest weight of the evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). "A court's

decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." *Id.*

¶ 26        Here, the trial court's finding that the State proved by clear and convincing evidence that respondent failed to make reasonable efforts to correct the conditions that led to the children's removal and reasonable progress toward the return of the children during the nine-month period at issue was not against the manifest weight of the evidence. Burnside testified that the children came into care due, in part, to substance abuse issues. She stated respondent had been ordered to complete random drug drops during the relevant nine-month period. She indicated he failed to appear for 10 or 11 of the drops, which were counted as positive, and he tested positive for cocaine and methamphetamine on two occasions. Based on this evidence, the court's finding that respondent had not made reasonable efforts to correct his substance abuse issues or reasonable progress toward addressing his substance abuse issues was not against the manifest weight of the evidence. While the evidence at the unfitness hearing indicated respondent's caseworker failed to refer him to domestic violence services during the relevant time period, the court's comments indicated that its finding of unfitness was not based on respondent's failure to complete domestic violence services.

¶ 27                                B. Best Interest Finding

¶ 28        Respondent argues the trial court's finding that it was in the minors' best interests to terminate his parental rights was erroneous because its finding that he was unfit was erroneous. We reject this argument, as we have found the court's finding of unfitness was not against the manifest weight of the evidence. Moreover, the record reflects that the court properly considered the best interest factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). The court found these factors weighed in favor of terminating

respondent's parental rights, finding the children's foster parent was better able to provide for their safety and welfare and to provide permanency. The court found respondent had not addressed his substance abuse issues and stated there was no evidence as to when respondent might "change [his] mind and start getting [his] act together." We find the court's best interest determination was not against the manifest weight of the evidence. See *In re C.P.*, 2019 IL App (4th) 190420, ¶ 68 ("A reviewing court will not disturb the trial court's decision regarding a child's best interests and the termination of parental rights unless it is against the manifest weight of the evidence.").

¶ 29                                    III. CONCLUSION

¶ 30            For the reasons stated, we affirm the trial court's judgment.

¶ 31            Affirmed.